**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**LONNIE LEE SMALL, JR.,**
  **Plaintiff,**

vs.                                                          Case No. 5:07cv200/RS/MD

**JAMES R. MCDONOUGH, et al.,**
  **Defendants.**

## O R D E R

This cause is before the court upon plaintiff's amended civil rights complaint filed pursuant to 42 U.S.C. §1983. (Doc. 11). Plaintiff has also filed a motion for appointment of counsel. (Doc. 12). From a review of the amended complaint, it is evident that the facts as presented fail to support a viable claim for relief against one or more of the named defendants. The court will therefore allow the plaintiff an opportunity to clarify his allegations in an amended complaint.

Plaintiff, an inmate of the Florida penal system, names fourteen defendants in his amended complaint: James McDonough, Secretary of the Florida Department of Corrections, and thirteen prison officials at Gulf Correctional Institution ("Gulf CI"): Warden Jerry Cummings, Chief Physician Dr. Bagilo, Nurse Sexton, Officer Moore, Officer Heyser, Officer Gathers, Officer Marshall, Sergeant Williams, Officer Curtis, Officer Barton, Nurse Riley, Nurse Goodrich, and Captain S. Williams. (Doc. 11, pp. 1-2). The allegations of plaintiff's amended complaint are as follows. On June 29, 2006, while being prepared for escort to confinement due to the filing of disciplinary reports by defendants Gathers and Marshall, defendant Moore "placed a pair of handcuffs on [plaintiff] wrong." (*Id.*, p. 5). Later that evening, defendants Heyser and Sergeant Williams "tried to remove the handcuffs for close to thirty (30) minutes, crushing my 4th and 5th vertebra's [sic] together,

causing all of my injuries." (*Id.*).  After plaintiff advised defendant Heyser that he needed to go to medical because his back and shoulder hurt, she gave him a request form and instructed him to submit an inmate request/grievance.

The following morning, plaintiff advised defendant Curtis that he "had a medical emergency."  Curtis walked off.  Defendant Nurse Riley was in plaintiff's dormitory for sick-call.  When plaintiff advised her that he "had a medical emergency," she informed plaintiff that that was not what she was there for and walked off.  Plaintiff complains that later that day defendant Barton "denied me access to my medical needs" when Barton stated he didn't have time to take plaintiff to medical.

Two days later, defendant Nurse Goodrich was in plaintiff's dormitory for sick-call.  Plaintiff advised her that his back and shoulder were in serious pain.  He further described how the injury took place: that when he was handcuffed on June 29, 2006 the keyhole in the handcuffs was placed in the wrong spot; that it had taken officers thirty minutes to remove the cuffs; and that during their removal plaintiff heard a pop in his shoulder and felt pain in his back.  Plaintiff also complained that he was having trouble breathing.  (*Id.*, pp. 5-6).  In response, Nurse Goodrich examined plaintiff and placed him on the call-out list to see a physician.  Plaintiff complains that the examination was conducted through the other side of his cell door and that he was never seen by a physician.  Upon release from confinement on July 12, 2006, plaintiff was seen by medical staff.  X-rays were taken the following day.  Plaintiff complains that he did not see a doctor on that date.

Plaintiff alleges that on August 13, 2006 defendant Captain S. Williams placed him in confinement on a disciplinary charge.

Plaintiff asserts that defendant Warden Cummings denied him access to adequate medical care when, on August 29, 2006, he told plaintiff he did not have time to talk with him.  (*Id.*, p. 6).

Plaintiff asserts that defendants Dr. Bagilo and Nurse Sexton exhibited deliberate indifference to his serious medical need "by not seeing [plaintiff] for the five months [he] was at Gulf Correctional Institution."

Claiming defendants' conduct constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments, plaintiff seeks $5 million compensatory damages and $4 million punitive damages.

In any section 1983 action, the initial inquiry must focus on whether two essential elements are present:

1. whether the conduct complained of was committed by a person acting under color of state law; and

2. whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420, 428 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).

To prevail on an Eighth Amendment claim, plaintiff must demonstrate: a substantial risk of serious harm, defendants' deliberate indifference to that risk, and causation. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1583 (11th Cir. 1985) (citing *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994); *LeMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993)). The first requirement, the objective component of Eighth Amendment analysis, requires:

> conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation – one "denying 'the minimal civilized measure of life's necessities.'"

*Taylor v. v. Adams*, 221 F.3d 1254, 1257-58 (11th Cir. 2000)(citing *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)(quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981))). The second requirement, the subjective component of Eighth Amendment analysis, requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor* at 1258 (citing *Wilson v. Seiter*, 501 U.S. at 300, 111 S.Ct. at 2325) ("The source of the intent requirement is not the predilections of this Court, but in the Eighth Amendment itself, which bans only cruel and unusual *punishment*. If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." (emphasis in original)).

"To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Taylor* at 1258 (quoting *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)*.* "A prison

official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 114 S.Ct. at 1979. Whether an officer was aware of a risk of serious harm may be deduced from circumstantial evidence such as the obviousness of the situation confronting the officer. *Hope v. Pelzer*, 536 U.S. 730, 738, 122 S.Ct. 2508, 2514, 153 L.Ed.2d 666 (2002) ("We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious.") (citing *Farmer*, 114 S.Ct. at 1981). However, mere knowledge by an official of infirm conditions does not establish deliberate indifference; it must also be demonstrated that, with knowledge of the infirm conditions, the official knowingly or recklessly declined to take actions that would have improved the conditions. *LeMarca v. Turner*, 995 F.2d at 1537.

The final requirement is that the plaintiff demonstrate a causal connection between the defendant's conduct and the constitutional harm. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003); *Swint v. City of Wadley, Alabama,* 51 F.3d 988, 999 (11th Cir. 1995); *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991). "Causation, of course, can be shown by personal participation in the constitutional violation." *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007) (citing *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (per curium)); *Hale v. Tallapoosa County*, 50 F.3d at 1582 (holding that to prevail against a defendant in his individual capacity, a plaintiff must show that the defendant was personally involved in acts or omissions that resulted in the constitutional deprivation).

In the instant case, although plaintiff names James McDonough as a defendant in this action, McDonough is mentioned no where in the body of plaintiff's amended complaint. As plaintiff was warned in this court's previous amend order, *respondeat superior*, without more, does not provide a basis for recovery under section 1983. *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Cottone v. Jenne, supra*; *Harris v. Ostrout,* 65 F.3d 912, 917 (11th Cir. 1995). "The mere right to control, without any control or direction having been exercised and without any failure to supervise, is not sufficient to support 42 U.S.C. § 1983 liability." *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694 n.58, 98 S.Ct. 2018, 2037 (1979). "Supervisory liability under § 1983 occurs

either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone,* 326 F.3d at 1360; *see also Marsh v. Butler County,* 268 F.3d 1014, 1035 (11th Cir. 2001)*; Swint,* 51 F.3d at 999; *Rivas*, 940 F.2d at 1495.  The necessary causal connection can be established when (1) a "history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so; (2) a supervisor's "custom or policy result[s] in deliberate indifference to constitutional rights;" or (3) facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  *Cottone, supra,* (internal marks, quotations, and citations omitted).  Plaintiff's complaint contains no allegations of conduct attributable to defendant McDonough.  Therefore, this defendant is not a proper party in this litigation and must be dismissed.

Plaintiff's sole allegations against defendants Gathers and Marshall are that they filed disciplinary reports against him.  Although these reports eventually led to plaintiff being handcuffed by another officer for escort to confinement, plaintiff alleges no facts to suggest that Gathers or Marshall personally participated in the cuffing, was directly involved with plaintiff's injuries, or denied him medical care.  Accordingly, plaintiff cannot establish the causal connection necessary to hold either of these defendants personally responsible under § 1983.

Plaintiff's only allegation against defendant Moore is that he placed the handcuffs on plaintiff in a way such that the keyhole was not in the right position. Completely lacking from plaintiff's allegations, however, is any suggestion that Moore knew at the time he cuffed plaintiff that he was positioning the restraints in such a way as to create a substantial risk of serious harm.  Rather, plaintiff's allegations show, at most, that Moore was negligent.  The same is true of plaintiff's allegations against Heyser and Sergeant Williams.  Plaintiff neither claims nor alleges facts to suggest that these defendants knew at the time they removed the handcuffs that they were exposing plaintiff to a substantial risk of serious harm and disregarded that risk.  Thus, as presented, plaintiff's claims against Moore, Heyser and Sergeant Williams fail to state a viable Eighth Amendment claim that is plausible on its face.

Plaintiff's sole allegation against defendant Captain S. Williams is that he placed plaintiff in confinement on a disciplinary charge on August 13, 2006. Yet, plaintiff wholly fails to explain how this exposed him to cruel and unusual punishment in violation of the Eighth Amendment. Plaintiff alleges no connection between this defendant and either the June 29, 2006 cuffing, plaintiff's injuries, or the subsequent denial of adequate medical care. Accordingly, plaintiff cannot establish deliberate indifference and causation necessary to hold this defendant personally responsible for plaintiff's injuries or the subsequent inadequate medical care.

Turning to plaintiff's remaining medical care claims, in the context of denial of medical care the Eighth Amendment's objective requirement has been more specifically described as encompassing two subsidiary requirements: an objectively serious need, and an objectively insufficient response to that need. *Taylor*, 221 F.3d at 1258 (quoting *Estelle*, 429 U.S. at 104-06, 97 S.Ct. at 291). A serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm," *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," *Hill v. DeKalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation omitted). The seriousness of the deprivation of that need is measured by the detrimental effect that the deprivation brought upon the person. *Id*. at 1188-89. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Id.* at 1188.

The second requirement, the subjective component of Eighth Amendment analysis, requires conduct that is more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care. *Murrell v. Bennett*, 615 F.2d 306, 310 n. 4 (5th Cir. 1980). An inadvertent or negligent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be "repugnant to the conscience of mankind." *Id*. at 105-06, 97 S.Ct. at 292; *Daniels v. Williams, supra*. Negligence alone is not enough to violate the constitution. *Id.*

Obviously, a complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. *Harris v. Coweta County*, 21 F.3d 388, 393

(11th Cir. 1994). And medical treatment can be so slight as to amount to no treatment at all, and so the mere fact that treatment was provided does not end the inquiry. *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989). Similarly, "grossly incompetent medical care or choice of an easier but less efficacious course of treatment can constitute deliberate indifference." *Id.*; *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (stating that medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" constitutes deliberate indifference.). However, disputes regarding the level of treatment or the existence of other treatment options do not alone evidence cruel and unusual punishment. *Estelle*, 429 U.S. at 107, 97 S.Ct. at 292; *Hamm v. Dekalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985). Where the inmate has received medical attention, and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991) (quoting *Waldrop*, 871 F.2d at 1035). To do otherwise would be "to constitutionalize claims that sound in tort law." *Hamm*, 774 F.2d 1575. In other words, a difference of opinion over matters of medical judgment does not give rise to a constitutional claim. *Harris*, 941 F.2d at 1505; *Waldrop* at 1033

Plaintiff claims defendant Curtis was deliberately indifferent to his serious medical need when plaintiff advised Curtis that he "had a medical emergency," and Curtis walked away. Plaintiff fails to allege however, that aside from making this general declaration, he informed Curtis of facts from which the inference could be drawn that a substantial risk of serious harm existed. The same is true of plaintiff's claim against defendant Nurse Riley. Plaintiff states he advised her that he "had a medical emergency;" however, his allegations fail to suggest that Riley was aware of facts from which the inference could be drawn that there existed a substantial risk of serious harm to plaintiff's health. The same is even more true of plaintiff's claims against defendant Barton and defendant Warden Cummings. Thus, as presented, plaintiff's allegations fail to state a claim of deliberate indifference as to these defendants.

As for defendant Nurse Goodrich, plaintiff complains of the manner in which she examined plaintiff, i.e., the fact that she performed her examination from the other side of

the cell door instead of entering plaintiff's cell. This is exactly the type of dispute that does not give rise to a constitutional claim. *See Harris v. Thigpen*, 941 F.2d at 1507.

Plaintiff's final contention is that defendants Dr. Bagilo and Nurse Sexton exhibited deliberate indifference to his serious medical need "by not seeing [plaintiff] for the five months [he] was at Gulf Correctional Institution." Again, plaintiff's allegations do not remotely suggest that either of these defendants were subjectively aware that plaintiff had a serious medical need, and that they disregarded it.

In amending, plaintiff should carefully review the foregoing to determine whether he can present allegations sufficient to state a cause of action under the relevant law. If plaintiff determines that he cannot state a claim for relief under 42 U.S.C. § 1983, he should file with the court a notice of voluntary dismissal of this action. If plaintiff chooses to file an amended complaint, he must completely fill out a new civil rights complaint form, marking it "**Second Amended Complaint.**" Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Parties" section of the form. In the "Statement of Facts," plaintiff should clearly describe how each named defendant is involved in each alleged constitutional violation, alleging the claims as to each defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts. If plaintiff cannot state exactly how a particular defendant harmed him, he should delete or drop that person as a defendant from his complaint. In the section entitled "Statement of Claim," plaintiff must state what rights under the Constitution or laws of the United States have been violated, and he must provide support in the statement of facts for the claimed violations. Plaintiff is advised that the amended complaint must contain all of his allegations because once an amended complaint is filed, all earlier complaints and filings are disregarded. N.D. Fla. Loc. R. 15.1. Plaintiff should file the amended complaint with an original signature with the court and keep an identical copy for himself. Plaintiff should not file a memorandum of law or otherwise provide citations to statutes and cases, and he should not file exhibits as evidentiary support for his complaint. The court will notify plaintiff when memoranda and exhibits are necessary,

*Case No: 5:07cv200/RS/MD*

such as prior to trial or in conjunction with a motion for summary judgment.  Furthermore, plaintiff should not submit service copies of his complaint unless and until the court directs him to do so.  Finally, plaintiff is advised that discovery is premature at this stage of the case and plaintiff should not do any discovery without leave of court.

As a final matter, the court will address plaintiff's motion for appointment of counsel. (Doc. 12).  "Prisoners raising civil rights claims . . . have no absolute constitutional right to counsel."  *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993); *Jackson v. Dallas Police Dep't,* 811 F.2d 260, 261-62 (5th Cir. 1986) ("There is no automatic right to the appointment of counsel in a section 1983 case.").  A district court has discretionary authority, under 28 U.S.C. § 1915(e)(1), to appoint counsel for indigent litigants in civil cases.  *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999);  *Killian v. Holt*, 166 F.3d 1156 (11th Cir. 1999). "Appointment of counsel in civil cases is . . . a privilege justified only by exceptional circumstances, such as the presence of facts and legal issues [which] are so novel or complex as to require the assistance of a trained practitioner."  *Kilgo*, 983 F.2d at 193 (quotations and citation omitted) (brackets in original); *see also Holt v. Ford,* 862 F.2d (11th Cir. 1989); *Jackson*, *supra*.  An additional consideration is "whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court." *Kilgo*, 983 F.2d at 193.[1]

In the instant case, plaintiff alleges in support of his motion that he "don't [sic] know the first thing about filing any motions or exhibits or discovery." (Doc. 12, p. 1).  Upon reviewing the pleadings in this action, the court finds that there are no exceptional circumstances to merit the appointment of counsel.  The legal issues in this case have been settled in previous cases, and the facts do not appear to be complex.  Moreover, the pleadings filed thus far by plaintiff suggest that he has an ability to communicate his allegations and litigate his case as well as that of the average *pro se* litigant.  If in the future it appears otherwise, plaintiff can then raise the issue for further consideration.

---

[1]As the Fifth Circuit summarized in *Jackson v. Dallas Police Dep't, supra*:

> A district court is not required to appoint counsel unless the case presents "exceptional circumstances." *Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982).  "The existence of such circumstances will turn on the quality of two basic factors--the type and complexity of the case, and the abilities of the individual bringing it." *Id*. at 266 (footnote omitted).

*Jackson,* 811 F.2d at 261-62.

Accordingly, it is ORDERED:

1. The clerk of court is directed to forward to the plaintiff a civil rights complaint form for use in actions under 42 U.S.C. §1983. This case number shall be written on the form.

2. Within **thirty (30) days** of the date of this order, plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written and submitted on the court form as instructed above. Failure to do so as instructed will result in a recommendation of dismissal of this action for failure to comply with an order of the court.

3. Plaintiff's motion for appointment of counsel (doc. 12) is DENIED without prejudice.

DONE AND ORDERED this 1st day of February, 2008.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**