IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

LONNIE LEE SMALL, JR.,
    Plaintiff,

vs.                              Case No. 5:07cv200/RS/MD

JAMES R. MCDONOUGH, et al.,
    Defendants.

## REPORT AND RECOMMENDATION

Plaintiff, an inmate of the Florida penal system proceeding *pro se*, has filed a second amended civil rights complaint under 42 U.S.C. § 1983. (Doc. 16). Leave to proceed *in forma pauperis* was granted without the assessment of an initial partial fling fee. (Doc. 10). Upon review of the second amended complaint, the court concludes that plaintiff has not presented an actionable claim against several named defendants.

Since plaintiff is proceeding *in forma pauperis*, the court must review his complaint to determine if it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The court must read plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). In determining whether the complaint states a claim upon which relief may be granted, the court accepts all the factual allegations in the complaint as true and evaluates all inferences derived from those

facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955, 1968-69, 1974, 167 L.Ed.2d 929 (May 21, 2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). A complaint is also subject to dismissal under Rule 12(b)(6) when its allegations--on their face--show that an affirmative defense bars recovery on the claim. *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001).

**Allegations of Second Amended Complaint**

Plaintiff's second amended complaint names nine defendants, all prison officials at Gulf Correctional Institution ("Gulf CI"): Chief Physician Dr. N. Bagilo, Nurse P. Sexton, Officer Kenny Moore, Officer M. Heyser, Sergeant Williams, Officer Curtis, Officer Barton, Nurse Riley and Nurse Goodrich. (Doc. 16, pp. 1-2). The allegations of the second amended complaint are as follows. On June 29, 2006 defendant Moore placed a pair of handcuffs on plaintiff while preparing to escort plaintiff to administrative confinement. (*Id.*, p. 7). Then, stating that he "was going to lock [plaintiff] up and teach [him] a lesson," Moore removed the handcuffs and placed them on plaintiff again. Once plaintiff arrived at confinement, defendants Heyser and Williams placed plaintiff in a shower stall for purposes of conducting a strip search. They first ordered plaintiff to place his arms through the flap in the door so they could remove his cuffs. The flap was approximately 2½ inches high. Plaintiff did so. Heyser and Williams attempted to remove the cuffs but were unsuccessful, noting that the keyhole was in the wrong place. Plaintiff advised them that Officer Moore had done the cuffing, and that their pulling on plaintiff's arms was hurting him. Heyser and Williams opened the door to the stall and pulled plaintiff out

backwards. Plaintiff told them his back and shoulder were hurting. The officers removed the cuffs and placed plaintiff back into the shower stall. Plaintiff declared a medical emergency, to which Officer Heyser responded, "I hope you are not a Jew because I am German." He then gave plaintiff five inmate request forms and advised him to file a grievance. (*Id.*, p. 8). Plaintiff again advised Heyser that he needed to go to medical. Heyser didn't respond.

The following morning plaintiff advised defendant Curtis that he "had a medical emergency." Curtis walked off. Plaintiff states Curtis "knew [plaintiff] had been injured by another officer," yet he ignored plaintiff's request for medical treatment "with the intent to punish [plaintiff] for writing up his co-workers." (*Id.*). Defendant Nurse Riley was in plaintiff's dormitory for sick-call. When plaintiff advised her that he "had a medical emergency," she informed plaintiff that that was not what she was there for and walked off. Plaintiff complains that later that day he informed defendant Officer Barton that he had a medical emergency, was in pain, and was having difficulty breathing. Barton stated he didn't have time to take plaintiff to medical. Plaintiff states that Barton must have known of plaintiff's injury because he had relieved Officer Heyser the night before.

Two days later, defendant Nurse Goodrich was in plaintiff's dormitory for sick-call. Plaintiff advised her that his back and shoulder hurt, that he had been in serious pain for two days and that he was having trouble breathing. (*Id.*, p. 9). He further described how the injury took place: that when he was handcuffed on June 29, 2006 the keyhole in the handcuffs was placed in the wrong spot; that it had taken officers thirty minutes to remove the cuffs; and that during their removal plaintiff heard a pop in his shoulder and felt pain in his back. In response, Nurse Goodrich examined plaintiff, told him that "[his] rib had pushed a hole in [his] lung and the reason [plaintiff] was having trouble breathing was that [his] lung now had fluid on it." (*Id.*). She advised plaintiff that she would put him on the list to see a doctor. Plaintiff complains that he was never seen by a doctor.

On July 12, 2006 plaintiff was seen by medical staff.  He was advised not to take his Ibuprofen because he had x-rays the following day.  On July 13, 2006 x-rays were taken.  On July 21, 2006 plaintiff was called to medical to sign a waiver to go to the Reception and Medical Center ("RMC").  On August 2, 2006 plaintiff was called to medical to receive a low bunk pass.  Plaintiff complains that he did not see a doctor on any of these occasions.

On October 17, 2006 plaintiff was transferred to RMC.  Plaintiff was seen by one Dr. Lord on October 24, 2006, who allegedly informed plaintiff that his 4th and 5th vertebrae were crushed together, that plaintiff had nerve damage on his left side, and that there was evidence of rotator cuff stenosis primarily involving the supraspinatus tendon.  (*Id.*, p. 10).  According to plaintiff, Dr. Lord's diagnosis indicated that plaintiff needed surgery.  Plaintiff was transferred back to Gulf CI on October 31, 2006.  (*Id.*).

Plaintiff complains that upon his return to Gulf CI, he has never been seen by defendant Dr. Bagilo.  He further complains that defendant Nurse Sexton has never examined him, that she erroneously told the medical staff at Gulf CI that plaintiff's shoulder was sprained (as opposed to plaintiff having a torn rotator cuff), and that she prescribed Ibuprofen which plaintiff believes is inappropriate for treating his "bone injury."  (*Id.*, p. 11).

Claiming defendants' conduct constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments, plaintiff seeks $5 million compensatory damages and $4 million punitive damages.  Plaintiff states he is suing defendants in their official capacities and individual capacities.

## Official Capacity Claims

It is well settled that 42 U.S.C. § 1983 does not create a cause of action for money damages against the States, a State agency, or State officials in their official capacities.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45 (1989).  Furthermore, absent waiver or express congressional

abrogation, neither of which is present in this case, the Eleventh Amendment prohibits a damages suit brought by a private individual against a State in federal court.  *Federal Maritime Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002); *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Gamble v. Florida Dep't of Heath and Rehabilitative Servs.*, 779 F.2d 1509, 1511 (11th Cir. 1986).  In light of the foregoing, plaintiff's § 1983 claims for damages against defendants in their official capacities must be dismissed.

<u>Individual Capacity Claims</u>

In any section 1983 action, the initial inquiry must focus on whether two essential elements are present:

1.  whether the conduct complained of was committed by a person acting under color of state law; and

2.  whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420, 428 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).

To prevail on an Eighth Amendment claim, plaintiff must demonstrate a substantial risk of serious harm, defendants' deliberate indifference to that risk, and causation.  *Hale v. Tallapoosa County*, 50 F.3d 1579, 1583 (11th Cir. 1985) (citing *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994); *LeMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993)).  The first requirement, the objective component of Eighth Amendment analysis, requires:

conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation – one "denying 'the minimal civilized measure of life's necessities.'"

*Taylor v. v. Adams*, 221 F.3d 1254, 1257-58 (11th Cir. 2000)(citing *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)(quoting *Rhodes v.*

*Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981))). The second requirement, the subjective component of Eighth Amendment analysis, requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor* at 1258 (citing *Wilson v. Seiter*, 501 U.S. at 300, 111 S.Ct. at 2325) ("The source of the intent requirement is not the predilections of this Court, but in the Eighth Amendment itself, which bans only cruel and unusual *punishment*. If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." (emphasis in original)).

"To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Taylor* at 1258 (quoting *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)*.* "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 114 S.Ct. at 1979. Whether an officer was aware of a risk of serious harm may be deduced from circumstantial evidence such as the obviousness of the situation confronting the officer. *Hope v. Pelzer*, 536 U.S. 730, 738, 122 S.Ct. 2508, 2514, 153 L.Ed.2d 666 (2002) ("We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious.") (citing *Farmer*, 114 S.Ct. at 1981). However, mere knowledge by an official of infirm conditions does not establish deliberate indifference; it must also be demonstrated that, with knowledge of the infirm conditions, the official knowingly or recklessly declined to take actions that would have improved the conditions. *LeMarca v. Turner*, 995 F.2d at 1537.

The final requirement is that the plaintiff demonstrate a causal connection between the defendant's conduct and the constitutional harm. *Cottone v. Jenne*, 326

F.3d 1352, 1360 (11th Cir. 2003); *Swint v. City of Wadley, Alabama,* 51 F.3d 988, 999 (11th Cir. 1995); *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991). "Causation, of course, can be shown by personal participation in the constitutional violation." *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007) (citing *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (per curium)).

In the instant case, plaintiff's allegations fail to state an Eighth Amendment claim against defendants Williams, Heyser, Curtis, Riley and Goodrich.

Plaintiff's neither claims nor alleges facts to suggest that defendant Heyser or defendant Williams knew at the time they removed the handcuffs that they were exposing plaintiff to a substantial risk of serious harm and disregarded that risk. To the contrary, plaintiff alleges that each time he informed these officers that a particular means of handling them hurt him, they ceased. Moreover, plaintiff alleges no facts to suggest that these defendants were subjectively aware at the time they removed plaintiff from the shower that leading him out backwards by the arms subjected him to a serious risk of substantial harm. Thus, as presented plaintiff's claims against Sergeant Williams and Officer Heyser fail to state a viable Eighth Amendment claim that is plausible on its face.[1]

Turning to plaintiff's medical care claims, plaintiff's allegations fail to state an Eighth Amendment claim against defendants Officer Curtis, Nurse Riley, Nurse Goodrich, Dr. Bagilo or Nurse Sexton. In the context of denial of medical care, the Eighth Amendment's objective requirement has been more specifically described as encompassing two subsidiary requirements: an objectively serious need, and an objectively insufficient response to that need. *Taylor*, 221 F.3d at 1258 (quoting *Estelle*, 429 U.S. at 104-06, 97 S.Ct. at 291). A serious medical need is one that, if left

---

[1] Plaintiff further claims that Officer Heyser was deliberately indifferent to his serious medical needs when he responded to plaintiff's declaration of a medical emergency by giving him request forms instead of calling the medical department. Yet plaintiff's allegations do not suggest that Heyser was aware of facts from which the inference could be drawn that plaintiff's condition was emergent. Up to that point, plaintiff had merely complained that his back and shoulder were "hurting." (Doc. 16, pp. 7-8).

*Case No: 5:07cv200/RS/MD*

unattended, "pos[es] a substantial risk of serious harm," *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," *Hill v. DeKalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation omitted). The seriousness of the deprivation of that need is measured by the detrimental effect that the deprivation brought upon the person. *Id*. at 1188-89. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Id.* at 1188.

The second requirement, the subjective component of Eighth Amendment analysis, requires conduct that is more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care. *Murrell v. Bennett*, 615 F.2d 306, 310 n. 4 (5th Cir. 1980). An inadvertent or negligent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be "repugnant to the conscience of mankind." *Id*. at 105-06, 97 S.Ct. at 292; *Daniels v. Williams, supra*. Negligence alone is not enough to violate the constitution. *Id.*

Obviously, a complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir. 1994). And medical treatment can be so slight as to amount to no treatment at all, and so the mere fact that treatment was provided does not end the inquiry. *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989). Similarly, "grossly incompetent medical care or choice of an easier but less efficacious course of treatment can constitute deliberate indifference." *Id.*; *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (stating that medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" constitutes deliberate indifference.). However,

disputes regarding the level of treatment or the existence of other treatment options do not alone evidence cruel and unusual punishment. *Estelle*, 429 U.S. at 107, 97 S.Ct. at 292; *Hamm v. Dekalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985). Where the inmate has received medical attention, and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991) (quoting *Waldrop*, 871 F.2d at 1035). To do otherwise would be "to constitutionalize claims that sound in tort law." *Hamm*, 774 F.2d 1575. In other words, a difference of opinion over matters of medical judgment does not give rise to a constitutional claim. *Harris*, 941 F.2d at 1505; *Waldrop* at 1033

Plaintiff claims defendant Curtis was deliberately indifferent to his serious medical need when plaintiff advised Curtis that he "had a medical emergency," and Curtis walked away. Plaintiff fails to allege however, that aside hearing plaintiff's general declaration, Curtis was aware of facts from which the inference could be drawn that plaintiff had a serious medical need. Plaintiff's speculation that this defendant "knew [plaintiff] had been injured by another officer" does not alter this conclusion. The same is true of plaintiff's claim against defendant Nurse Riley. Plaintiff states he advised her that he "had a medical emergency;" however, this fails to suggest that Riley was aware of facts from which the inference could be drawn that there existed a substantial risk of serious harm to plaintiff's health. Thus, as presented, plaintiff's allegations fail to state a claim of deliberate indifference as to these defendants.

As for defendant Nurse Goodrich, plaintiff complains of the manner in which she examined plaintiff, *i.e.*, the fact that she performed her examination from the other side of the cell door instead of entering plaintiff's cell. This is exactly the type of difference of opinion that does not give rise to a constitutional claim. *See Harris v. Thigpen*, 941 F.2d at 1507. Furthermore, plaintiff cannot hold Nurse Goodrich

liable for the fact that he was not seen by a doctor, because his allegations do not suggest that she was the cause (i.e., that she failed to put him on the call-out list).

Plaintiff contends defendant Dr. Bagilo exhibited deliberate indifference to his serious medical need because plaintiff "was never seen" by Dr. Bagilo, and by virtue of Dr. Bagilo's status as the Chief Physician, he "put[ ] [plaintiff] in a situation not to be treated by the rest of the medical staff." (Doc. 16, p. 11). These allegations do not remotely suggest that Dr. Bagilo was subjectively aware that plaintiff had a serious medical need, and that he disregarded it. Dr. Bagilo's status as Chief Physician is not a basis to hold him liable for the conduct of medical staff at Gulf CI. As plaintiff was warned in this court's previous amend orders, *respondeat superior*, without more, does not provide a basis for recovery under section 1983. *Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Cottone v. Jenne, supra*; *Harris v. Ostrout,* 65 F.3d 912, 917 (11th Cir. 1995). "The mere right to control, without any control or direction having been exercised and without any failure to supervise, is not sufficient to support 42 U.S.C. § 1983 liability." *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694 n.58, 98 S.Ct. 2018, 2037 (1979). "Supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone,* 326 F.3d at 1360; *see also Marsh v. Butler County,* 268 F.3d 1014, 1035 (11th Cir. 2001)*; Swint,* 51 F.3d at 999; *Rivas*, 940 F.2d at 1495. The necessary causal connection can be established when (1) a "history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so; (2) a supervisor's "custom or policy result[s] in deliberate indifference to constitutional rights;" or (3) facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone, supra,* (internal marks, quotations, and citations omitted).

Plaintiff's complaint contains no allegations of conduct attributable to defendant Dr. Bagilo. Therefore, this defendant is not a proper party in this litigation and must be dismissed.

Plaintiff's final contention is that defendant Nurse Sexton exhibited deliberate indifference to his serious medical need "by not seeing [plaintiff] and [by] telling the rest of medical that my shoulder was only sprong [sic] when it had a tear on the rotator cuff, . . . and prescribing me Ibuprofen for a bone injurie [sic] - which cause me more pain because it put fluid on my bones." (Doc. 16, p. 11). Again, these allegations do not state an Eighth Amendment claim that is plausible on its face, because wholly lacking are facts suggesting that Nurse Sexton was subjectively aware of a serious medical need, and that her care was grossly incompetent. Rather, plaintiff merely appears to dispute the adequacy of the medical treatment she prescribed.

Based on the foregoing, the undersigned concludes that plaintiff's facts, as presented, fail to support a viable claim for § 1983 relief as to defendants Heyser, Williams, Curtis, Riley, Goodrich, Bagilo and Sexton. Therefore, plaintiff's individual capacity claims against these defendants should be dismissed.

By separate order, service of the second amended complaint shall be directed and defendants Moore and Barton required to respond to plaintiff's individual capacity claims of defendant Moore's alleged use of excessive force and defendant Barton's alleged refusal to respond to plaintiff's complaints of pain and difficulty breathing. Should the district court decline to adopt this Report in part or whole, as may be necessary this court at a later date shall direct service of the second amended complaint upon other defendants.

Accordingly, it is ORDERED:

The docket shall reflect that the defendants in this case, as named in the second amended complaint, are Dr. N. Bagilo, Nurse P. Sexton, Officer Kenny Moore,

**Officer M. Heyser, Sergeant Williams, Officer Curtis, Officer Barton, Nurse Riley and Nurse Goodrich.**

And, it is respectfully RECOMMENDED:

1.  That plaintiff's official capacity claims against all of the defendants be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(iii).

2.  That plaintiff's individual capacity claims against defendants Officer Heyser, Sgt. Williams, Officer Curtis, Nurse Riley, Nurse Goodrich, Dr. Bagilo and Nurse Sexton be DISMISSED WITH PREJUDICE under 28 U.S.C. §1915(e)(2)(B)(ii) for plaintiff's failure to state a claim upon which relief may be granted.

3.  That this cause be REMANDED to the undersigned for further proceedings as may be necessary.

At Pensacola, Florida, this 5th day of May, 2008.

/s/ *Miles Davis*
　　　MILES DAVIS
　　　UNITED STATES MAGISTRATE JUDGE


### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).