## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**LONNIE LEE SMALL, JR.,**
        **Plaintiff,**

**vs.**                                          **Case No.: 5:07cv200/RS/MD**

**OFFICER  BARTON, et al.,**
        **Defendants.**
_____

### REPORT AND RECOMMENDATION

This case filed pursuant to 42 U.S.C. § 1983 is now before the court upon defendant Officer Barton's motion to dismiss for failure to exhaust available administrative remedies.  (Doc. 59).  Plaintiff responded in opposition to the motion. (Doc. 65).  On October 14, 2008, the court entered an order informing the parties that the motion to dismiss would be taken under advisement on October 24, 2008.  (Doc. 67).  The parties were directed to file and serve, prior to the advisement date, affidavits and any other documents or materials authorized to be filed under the Federal Rules of Civil Procedure.  (*Id.*).  Additional materials were filed by defendant Barton.  (Doc. 70).  No additional materials have been filed by plaintiff.  Upon review of the submissions of the parties, it is the opinion of the undersigned that defendant Barton's motion to dismiss should be granted.


### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, an inmate of the Florida penal system proceeding *pro se* and *in forma pauperis*, initiated this action on July 24, 2007.  (Doc. 1, p. 31).  He filed a second amended complaint on March 10, 2008.  (Doc. 16).  On June 5, 2008 after dismissing

several of plaintiff's claims, the District Judge remanded the case to the undersigned for further proceedings on plaintiff's individual capacity claims against defendants Officer Barton and Officer Kenny Moore.  (Docs. 19, 25).[1]

With regard to those defendants, plaintiff alleges that on June 29, 2006 while confined at Gulf Correctional Institution ("Gulf CI"), defendant Officer Moore used excessive force on him by intentionally handcuffing him in a manner which made the cuffs difficult to remove (putting the keyhole in the wrong place).  This caused plaintiff pain and injury to his back.  Plaintiff alleges that on the day following the incident, Officer Barton walked past his cell and, after plaintiff complained to him that he had a medical emergency, was in pain, and was having difficulty breathing, responded that he didn't have time to take plaintiff to the medical department.  Claiming that the foregoing conduct constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments, plaintiff seeks $5 million compensatory damages and $4 million punitive damages.  (Doc. 16).

Defendant Barton, in his motion to dismiss, raises the defense that plaintiff failed to properly exhaust his available administrative remedies under the PLRA.  Attached to his motion is an affidavit from Rebecca Padgham, Management Analyst I in the Florida Department of Corrections' Bureau of Inmate Grievances.  Padgham states that she is responsible for the record keeping of inmate grievance appeals filed with the Department of Corrections' ("DOC's") Central Office, and that grievance appeal records reflect that from 2006 to the present, plaintiff did not file any grievance appeals regarding Officer Joe Barton.  (Doc. 59, Ex. E).  Also attached to defendant Barton's motion are copies of grievances plaintiff filed concerning the June 29, 2006 incident.  (*Id.*, Exs. B-D).

Plaintiff has responded in opposition to the motion, arguing that Officer Barton's shift was known for destroying grievances.  Apparently as an alternative

---

[1]The District Judge dismissed plaintiff's official capacity claims against all defendants; dismissed plaintiff's individual capacity claims against defendants Heyser, Sergeant Williams, Officer Curtis, Nurse Riley, Nurse Goodrich, Doctor Baglio and Nurse Sexton.  (Docs. 19, 25).

argument, plaintiff states that the grievances he filed concerning the June 29, 2006 incident were sufficient to alert prison officials of his complaints about Officer Barton's conduct, "because inmates can't always get all of the officer['s] names." (Doc. 65).  In support of his response, plaintiff relies on the allegations of his second amended complaint, as well as copies of two additional grievances.  (*Id.*, Exs. A-C).

Defendant Barton has filed additional materials to rebut plaintiff's suggestion that his failure to exhaust his claim was the result of staff misconduct at Gulf CI. (Doc. 70).

## DISCUSSION

### Standard on Motion to Dismiss for Failure to Exhaust Available Administraitve Remedies Under the Prison Litigation Reform Act

In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA").  The court held that the defense of failure to exhaust should be treated as a matter in abatement.  *Id.*, at 1374.  "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter."  *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting *Bryant*, 530 F.3d at 1374).  Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."  *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation marks omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps.  *Turner*, 541 F.3d at 1082  First, the court looks to the factual allegations in the defendant's motion to dismiss, and those in the plaintiff's response.  *Id.*  If they conflict, the court accepts the plaintiff's version as true.  "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed."  *Id.*; *see also Bryant*, 530

F.3d at 1373-74 (concluding that there was a genuine issue of material fact about the availability of administrative remedies before addressing the propriety of the district court acting as a factfinder to resolve the issue).

If the complaint is not subject ot dismissal at the first step, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (citing *Bryant*, 530 F.3d at 1373-74, 1376). It is the defendant's burden to prove failure to exhaust. *Id.* ("The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies."). Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

## Exhaustion of Administrative Remedies

Title 42 U.S.C. § 1997e provides in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[2] Exhaustion of all available administrative remedies is mandatory, and is

---

[2] The purpose of this exhaustion requirement is to reduce the quantity and improve the quality of prisoner suits. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). In *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998), the Eleventh Circuit noted the following seven policy reasons favoring exhaustion:

(1)  to avoid premature interruption of the administrative process;
(2)  to let the agency develop the necessary factual background upon which decisions should be based;
(3)  to permit the agency to exercise its discretion or apply its expertise;
(4)  to improve the efficiency of the administrative process;
(5)  to conserve scarce judicial resources;
(6)  to give the agency a chance to discover and correct its own errors; and
(7)  to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

*Id.* at 1327 (quoting *Kobleur v. Group Hospitalization and Med. Servs., Inc.*, 954 F.2d 705, 712 (11th Cir. 1992)).

a pre-condition to suit.  *Booth v. Churner*, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *see also Porter v. Nussle*,  534 U.S. 516, 524-25, 122 S.Ct. 983, 988, 152 L.Ed.2d 12 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter v. Nussle*,  534 U.S. at 524, 122 S.Ct. 983.  Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *Booth,* 532 U.S. at 734, 121 S.Ct. at 1825.  The requirement is not subject to waiver by a court or futility or inadequacy exceptions.  *See Booth* at 741 n. 6; *McCarthy v. Madigan*, 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) ("Where Congress specifically mandates, exhaustion is required."); *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998).  Moreover, as the United States Supreme Court recently held, the PLRA requires "proper exhaustion," so that the agency addresses the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2387-88, 165 L.Ed.2d 368 (2006); *see also* 126 S.Ct. at 2388 (explaining that "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.").  The exhaustion requirement is not satisfied by the prisoner filing an untimely or otherwise procedurally defective administrative grievance or appeal.  126 S.Ct. at 2378.

Generally, the Florida Department of Corrections ("FDOC") provides a three-level administrative grievance procedure for prisoner complaints.  This procedure includes an informal grievance, a formal grievance and an appeal to the Office of the Secretary.  *See* FLA. ADMIN. CODE rr. 33-103.005 to 103.007 (2007).  For medical

grievances, however, informal grievances are not required.   FLA. ADMIN. CODE r. 33-103.005(1); *see also* FLA. ADMIN. CODE r. 33-103.006(3)(e) and 33-103.006(2)(h).

Findings of Fact

Plaintiff filed this suit on July 24, 2007.  (Doc. 1).  In his second amended complaint, he asserts with regard to the exhaustion issue that after the handcuffs were removed and he complained of pain, he was given "about five request [forms]" by Correctional Officer Heyser.  (Doc. 16, p. 8).  Plaintiff states that four of his grievances "were never answered," (*id.*), and that the one response he received was from Assistant Warden Mercer in October of 2006.  (*Id.*, p. 10).   There are no grievances attached to plaintiff's second amended complaint; however, plaintiff did attach copies of grievances to his original complaint. (Doc. 1, pp. 14-21).  Those are being considered part of the record.

The grievances attached to plaintiff's original complaint, as well as the evidence submitted by defendant Barton, establish the following.  On July 25, 2006 plaintiff submitted an informal grievance complaining that defendant Officer Moore put a set of handcuffs on him backwards, resulting in injury to plaintiff's back.  Plaintiff made no mention of Officer Barton or any other officer denying a request for medical treatment.  The grievance was denied.  (Doc. 59, Ex. B; *see also* Doc. 1, p. 14).  On September 14, 2006, plaintiff submitted a formal grievance to the Warden.  Again, plaintiff made no mention of being denied medical care.  He grieved only the handcuffing incident.  (Doc. 59, Ex. C; *see also* Doc. 1, p. 16).  Assistant Warden Mercer denied the grievance on October 5, 2006, stating:  "As stated in your informal grievance attached, placement of cuffs on inmates being escorted to medical is standard procedure.   Medical staff did not report any injuries.   However, your allegations have been reported to the Inspector General's Office.  Based upon the foregoing information, your grievance is denied."  (Doc. 59, Ex. C; *see also* Doc. 1, p. 15).

On October 18, 2006, plaintiff filed an appeal with the Office of the Secretary, asserting that the combined actions of Officer Moore (in placing the handcuffs on plaintiff) and Officer Heyser (in removing the handcuffs despite plaintiff's exclamations of pain), caused injury to plaintiff's back.  (Doc. 59, Ex. D; *see also* Doc. 1, p. 18).  Plaintiff noted that the only medical treatment he had received was Ibuprofen, which was not easing the pain.  Again, plaintiff did not mention Officer Barton, nor did he suggest that an unidentified officer had refused his request for medical attention following removal of the handcuffs.  The appeal was denied on October 24, 2006, as follows:  "The response that you received at the institutional level has been reviewed and is found to appropriately address the concerns that you raised at the institutional level as well as the Central Office level.  Your allegations are being investigated by the Inspector General's office."  (Doc. 59, Ex. D; *see also* Doc. 1, p. 17).

Ms. Padgham with the DOC's Bureau of Inmate Grievance Appeals reviewed the available grievance records kept in the Department of Corrections' Central Office.  The grievance appeal records reflect that, from 2006 to the present, plaintiff did not file any grievance appeals concerning defendant Officer Joe Barton.  (Doc. 59, Ex. E).

In addition to the grievances discussed above, plaintiff has submitted copies of  the following grievances, either as attachments to his original complaint or as part of his response to the motion to dismiss.  On July 7, 2006, plaintiff submitted an inmate request seeking release from administrative confinement.  (Doc. 1, p. 19; Doc. 65, Ex. B).  Neither Officer Barton nor his conduct was mentioned.  On July 25, 2006, plaintiff submitted an inmate request seeking the names of the officers working security and confinement on June 29, 2006 on the 3-11 shift.  (Doc. 1, p. 20).  The grievance was answered on July 30, 2006.  Neither Officer Barton nor his conduct was mentioned.  On August 31, 2006, plaintiff submitted an informal grievance addressed to Capt. Williams "grieving the cruel and unusual punishment

that you Capt. Williams, are putting me through." (*Id.*, p. 21).  The grievance mentioned nothing of defendant Officer Barton or his  alleged misconduct.  Plaintiff personally wrote to the inspector investigating the June 29, 2006 incident.  Neither Office Barton nor his conduct was mentioned.  (*Id.*, pp. 23-25).  On August 5, 2008, plaintiff complained that the Gulf CI medical department was not providing adequate medical treatment and medical passes.  (Doc. 65, pp. 9-10).  This grievance, filed after plaintiff initiated this lawsuit, mentions nothing of Officer Barton or his alleged misconduct.  In summary, plaintiff's documentary evidence does not remotely suggest that plaintiff grieved defendant Barton's failure to respond to his medical needs.

The only remaining material pertinent to the exhaustion issue is plaintiff's argument in opposition to the motion to dismiss.  Plaintiff's allegations are unsworn and, therefore, not considered competent evidence.  Even if the court considered them, they do not directly conflict with defendant Barton's evidence.  Plaintiff does not state that he in fact did submit a grievance concerning Office Barton's alleged misconduct.  Nor does plaintiff state that any of his grievances were in fact destroyed by staff at Gulf CI.  Instead, he asserts that he was given (and presumably filed) five grievances, that only one was answered, and that Gulf CI staff were known to destroy inmates' grievances.  From these assertions, plaintiff urges the court to <u>assume</u> that he used one of the five forms to grieve defendant Barton's conduct, and to further <u>assume</u> from the lack of evidence of a grievance concerning Barton, that <u>if</u> one existed it was destroyed.  (Doc. 65, ¶¶ 1, 2).  The court will not make such assumptions.  Plaintiff's unsupported deductions do not raise a genuine issue of material fact as to whether plaintiff exhausted his available administrative remedies concerning defendant Barton.

<u>Conclusion of Law</u>

Upon full consideration of the evidence within this record, the undersigned concludes that there are no genuine disputes of material fact, and that defendant

Officer Barton has proven that plaintiff failed to exhaust his available administrative remedies with respect to his claim against Barton.  Therefore, the claim should be dismissed.

Accordingly it is respectfully RECOMMENDED:

1.  That defendant Officer Barton's motion to dismiss (doc. 59) be GRANTED.

2.  That plaintiff's motion to dismiss defendant Barton's motion to dismiss (doc. 65) be DENIED.

3.  That plaintiff's individual capacity claim against defendant Officer Barton be DISMISSED WITHOUT PREJUDICE.

4.  That this matter be referred to the undersigned for further proceedings on plaintiff's individual capacity claim against defendant Officer Kenny Moore.

At Pensacola, Florida, this 31st day of October, 2008.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>


**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**